[Cite as *State v. Oberholtz*, 2016-Ohio-8506.]

STATE OF OHIO        )           IN THE COURT OF APPEALS
                   )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

STATE OF OHIO                C.A. No.     27972

    Appellant

    v.                              APPEAL FROM JUDGMENT
                                 ENTERED IN THE
JANELLE OBERHOLTZ        COURT OF COMMON PLEAS
                                 COUNTY OF SUMMIT, OHIO
    Appellee              CASE No.    CR 15 06 1905B

DECISION AND JOURNAL ENTRY

Dated: December 30, 2016

HENSAL, Judge.

**{¶1}** The State of Ohio appeals an order of the Summit County Court of Common Pleas that granted Janelle Oberholtz's motion to suppress. For the following reasons, this Court affirms.

I.

**{¶2}** Around 5:00 p.m. on June 23, 2015, Akron police officers David Rouse and Natalie Tassone responded to a dispatch about a domestic fight on Iona Avenue. When they reached the location, the officers saw a man and woman arguing while walking down the street. As the officers approached in their cruiser, the couple went up the driveway of one of the houses. After parking nearby, the officers got out of their cruiser and walked up the driveway of the house. Officer Rouse began speaking to the man who had been part of the argument and directed the woman, Ms. Oberholtz, to speak to Officer Tassone.

**{¶3}** When Ms. Oberholtz approached Officer Tassone, she told the officer that she and the man were just arguing and that everything was fine. Officer Tassone asked her what they had been arguing about, and Ms. Oberholtz answered that it was over a text message. Officer Tassone said "[o]kay" and then asked whether Ms. Oberholtz had anything illegal on her. As soon as Ms. Oberholtz indicated that she did not, Officer Tassone asked whether she could check, and Ms. Oberholtz assented. Officer Tassone instructed Ms. Oberholtz to raise her hands up and put them behind her head and then asked whether she could go in Ms. Oberholtz's pockets, to which Ms. Oberholtz agreed. During the search, Officer Tassone found a baggie in one of Ms. Oberholtz's pockets that contained what appeared to be a small amount of methamphetamine or heroin. She then handcuffed Ms. Oberholtz and continued the search, finding a syringe in Ms. Oberholtz's bra.

**{¶4}** The Grand Jury indicted Ms. Oberholtz for aggravated possession of drugs and possessing drug abuse instruments. Ms. Oberholtz moved to suppress the physical evidence gathered by the officers, arguing that they had violated her Fourth Amendment rights. Following a hearing, the trial court granted her motion, concluding that the State had failed to establish that Ms. Oberholtz voluntarily consented to the search of her person, including her pockets. The State has appealed, assigning as error that the trial court incorrectly granted Ms. Oberholtz's motion to suppress.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS.

**{¶5}** The State argues that the trial court incorrectly granted Ms. Oberholtz's motion to suppress. A motion to suppress presents a mixed question of law and fact:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶6} The State concedes that Officer Tassone's search of Ms. Oberholtz was not the limited pat-down search for weapons authorized by *Terry v. Ohio*, 392 U.S. 1 (1968). Instead, it argues that the search was authorized because Ms. Oberholtz consented to it. Although searches conducted without a warrant are "per se unreasonable" under the Fourth Amendment, it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶7} The State argues that the trial court incorrectly found that Ms. Oberholtz's consent to the search was not "clearly audible" on Officer Tassone's body camera recording. Although acknowledging that repeated listening may be required to separate Ms. Oberholtz's voice out from the background noise, it contends that Ms. Oberholtz replied "[m]mm-hmmm" when Officer Tassone asked whether she could check Ms. Oberholtz for anything illegal. It also contends that Ms. Oberholtz answered "yeah" when asked whether Officer Tassone could search in her pockets. The State also argues that, even if a response cannot be heard on the officer's body-camera recording, it does not negate the officer's testimony about what was said. The State points out that Officer Tassone testified at the suppression hearing that Ms. Oberholtz consented to the search. According to the State, the fact that an officer's body camera may not have picked up every sound does not mean that something did not happen. It, therefore, argues

that the trial court incorrectly found that Ms. Oberholtz's answers to Officer Tassone were more akin to acquiescence than consent.

**{¶8}** "In order to rely on the consent exception of the warrant requirement, the State must demonstrate that the consent was 'freely and voluntarily given.'" *State v. Starks*, 9th Dist. Summit No. 27347, 2015-Ohio-2137, ¶ 8, quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "[T]he government bears the burden of showing that consent was 'freely and voluntarily' given by 'clear and positive' evidence.'" *Id.*, quoting *State v. Feeney*, 9th Dist. Summit No. 25727, 2011-Ohio-5474, ¶ 12. "Voluntariness is a question of fact to be judged by the totality of the circumstances." *State v. Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428, ¶ 29.

**{¶9}** The trial court determined that the officers were permitted to initially stop Ms. Oberholtz to investigate the reason for the dispatch. Once Ms. Oberholtz informed Officer Tassone that they were just yelling at each other and that they were fine, however, Officer Tassone turned the encounter into an investigation into possible drug activity that "was not based on any articulable facts giving rise to a suspicion of illegal activity justifying an extension of the detention." It found that, under the totality of the circumstances, Ms. Oberholtz's alleged consent to the search of her person, including her pockets, was "better characterized as mere acquiescence to Officer Tassone's claim of lawful authority[.]" It concluded that the State failed to establish that Ms. Oberholtz consented to the search of her person, including the search of her pockets and under her clothing, and that the search, therefore, violated Ms. Oberholtz's Fourth Amendment rights.

**{¶10}** The State has not contested the trial court's determination that "the continued detention of Defendant Oberholtz was improper." The Ohio Supreme Court has held that,

"[o]nce an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." *State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph three of syllabus.

{¶11} Officer Tassone's transition from proper to improper questioning was "seamless[.]" *See id*. at 244 (explaining that the undetectability of such a "transition may be used by police officers to coerce citizens into answering questions that they need not answer[.]"), quoting *State v. Robinette*, 73 Ohio St.3d 650, 654 (1995). As soon as Ms. Oberholtz finished explaining why there had been an argument, Officer Tassone stated: "Okay, you have anything illegal on you?" and when Ms. Oberholtz answered "[n]o," Officer Tassone immediately asked Ms. Oberholtz whether she could check, to which Ms. Oberholtz murmured "mmm-hmmm." The transition from the end of the permitted detention to Ms. Oberholtz indicating "consent" during the improper detention took no more than five seconds. Meanwhile, Officer Rouse had put black gloves on and was conducting a search of the man that had been arguing with Ms. Oberholtz. This encounter took place only a few feet from Ms. Oberholtz and Officer Rouse can be heard instructing the man to raise his arms. By the time Ms. Oberholtz answered "yeah" to Officer Tassone's request to go in her pockets eleven seconds later, she was also standing with her arms raised and was in the middle of being patted down by Officer Tassone.

{¶12} Upon review of the record, we conclude that there is competent, credible evidence to support the trial court's finding that, under the totality of the circumstances, Ms. Oberholtz's replies to Officer Tassone do not clearly indicate that her "consent" was an independent act of

free will instead of mere acquiescence or submission to Officer Tassone's claim of lawful authority. The State's assignment of error is overruled.

III.

**{¶13}** The trial court did not err when it granted Ms. Oberholtz's motion to suppress. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellant.

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellee.